ALICE MINERY, ADMINISTRATRIX OF THE ESTATE OF AMOS B. BEAHN, PLAINTIFF-RESPONDENT, v. ARTHUR T. FENTON, DEFENDANT-APPELLANT.

Argued February 16, 1959—Decided March 17, 1959.

*Mr. Thomas P. Cook* argued the cause for the appellant (*Messrs. French and Cook,* attorneys).

*Mr. Perry J. Martin* argued the cause for the respondent (*Mr. Gabriel Kirzenbaum*, attorney).

The opinion of the court was delivered by

JACOBS, J. The defendant appealed to the Appellate Division of the Superior Court from a judgment entered in the Mercer County Court in favor of the plaintiff. We certified on our own motion.

The cause was submitted on a stipulation which set forth the following facts: On April 12, 1937 the plaintiff's predecessor obtained a Massachusetts judgment against the defendant in the sum of $6,927.39 plus $27.25 costs. This judgment was entered in an action against the defendant for the wrongful death of the plaintiff's intestate "arising out of the negligence of one Avery H. Gould in the operation of an automobile owned by the defendant." Gould was operating the automobile as the agent or servant of the defendant who was riding in the rumble seat of the automobile at the time of the accident. The complaint in the Massachusetts action against the defendant contained two counts, the first for conscious suffering and the second for death without conscious suffering. Both counts "alleged negligent operation of the automobile by Gould and ownership of the automobile by the defendant." Judgment was rendered in favor of the defendant on the first count, with costs to the defendant in the sum of $17.50, and judgment was rendered in favor of the plaintiff on the second count in the sum of $6,927.39 plus $27.25 costs. When the action against the defendant was instituted in Massachusetts another action was simultaneously instituted against Gould. Both actions were brought under the Massachusetts wrongful death statute. See *Annotation Laws of Mass., vol.* 7A, *c.* 229, § 2C (1955 *Comp.*) ; *vol.* 7A, *c.* 229, § 2 (1958 *Cum. Supp.*). On April 12, 1937 judgment against Gould was entered in the sum of $6,927.39 plus $27.25 costs. In 1954 a complaint on the Massachusetts judgment against the defendant was filed in the Court of Common Pleas, County of Montgomery, Pennsylvania. An appearance was filed, and on

January 21, 1955 a judgment was entered against the defendant for want of an answer. Damages were assessed at $6,954.64 plus costs of $32.88. After this judgment was entered Gould paid the plaintiff's predecessor the sum of $2,500 and in consideration obtained a general release dated October 5, 1955 in which the plaintiff's predecessor released all claims against Gould and particularly all claims under the Massachusetts judgment against him. On October 7, 1955 a satisfaction of the judgment against Gould was duly entered on the court records in Massachusetts.

On May 8, 1957 the plaintiff instituted her action in the Mercer County Court seeking to recover the sum of $6,954.64 and costs of $32.88 on the Pennsylvania judgment against the defendant. An answer was filed which alleged that the Massachusetts judgments against the defendant and Gould "arose from a single cause of action involving the death of Amos B. Beahn, plaintiff's decedent, as the result of an automobile accident in which Avery H. Gould was the driver of an automobile owned by the defendant"; that the plaintiff's predecessor had executed a release to Gould in full satisfaction of the judgment against him; and that "the release to Avery H. Gould has released the defendant from any liability to plaintiff." The trial judge, acting on the stipulated facts, rendered his opinion on May 2, 1958 which rejected the defendant's contention that the release of Gould had released him, and directed that judgment be entered in the plaintiff's favor in the sum of $4,487.52 plus costs, which represented the sum demanded in the plaintiff's complaint less the payment of $2,500 by Gould. Judgment was entered on June 5, 1958 and the defendant appealed, contending that the matter is governed by Massachusetts law and that under that law the release of Gould released the defendant. The defendant asserts further that even if the law of Pennsylvania or New Jersey were controlling, the result would be the same as under Massachusetts law. On the other hand, the plaintiff contends that the defendant is liable under the law of Massachusetts notwithstanding

the $2,500 payment by Gould and his release, and she asserts further that "the defendant is liable under Pennsylvania and New Jersey law."

 We consider that the law of Massachusetts is controlling as to the effect of the payment by Gould and his release. See *Preine v. Freeman,* 112 *F. Supp.* 257, 260 (*D. C. E. D. Va.* 1953); *Shapiro v. Embassy Dairy,* 112 *F. Supp.* 696, 698 (*D. C. E. D. N. C.* 1953); *cf. Daily v. Somberg,* 28 *N. J.* 372, 381 (1958). The cause of action arose in Massachusetts, the judgment was entered in Massachusetts, the release was apparently executed in Massachusetts by the plaintiff's predecessor as administrator of the estate of Amos B. Beahn under appointment by the Probate Court of Hampden County, Massachusetts, and the administrator's receipt of the $2,500 from Gould "in full satisfaction" of the judgment was duly entered on the records of the Massachusetts Superior Court. When the plaintiff's predecessor accepted the payment from Gould in full satisfaction of the judgment and formally released him without any restrictions or qualifications, he subjected himself to whatever the legal consequences there were, under Massachusetts law, on the related judgment against the defendant. See *Brooks v. Neal,* 223 *Mass.* 467, 112 *N. E.* 78 (1916). The fact that in the interim a Pennsylvania judgment was entered against the defendant on the basis of the Massachusetts judgment did not significantly affect matters, for the entry of the Pennsylvania judgment did not alter the "essential nature and real foundation" of the claim against the defendant. See *State of Wisconsin v. Pelican Ins. Co. of New Orleans,* 127 *U. S.* 265, 292, 8 *S. Ct.* 1370, 32 *L. Ed.* 239, 244 (1888); *American Automobile Ins. Co. v. Niebuhr,* 124 *N. J. Eq.* 372, 376 (*Ch.* 1938). Immediately upon its entry the Pennsylvania judgment became binding upon the defendant and was entitled to full faith and credit, but any later action by its holder which in contemplation of law amounted to its satisfaction or release could clearly be taken advantage of by the defendant. See *Lennon v. Cohen,* 264 *Mass.* 414, 163 *N. E.* 63, 69 (1928).

Accordingly, the issue before us for determination is whether the action of the plaintiff's predecessor in unconditionally releasing Gould upon his payment of $2,500 in full satisfaction of the judgment against him had the legal effect under Massachusetts law of satisfying or releasing the related claim against the defendant. See *Ryan v. Annelin,* 228 *Mass.* 591, 118 *N. E.* 257 (1918); *cf. Fleming v. Dane,* 298 *Mass.* 216, 10 *N. E.* 2d 85 (1937); *Muse v. De Vito,* 243 *Mass.* 384, 137 *N. E.* 730 (1923).

In *Leonard v. Blake,* 298 *Mass.* 393, 10 *N. E.* 2d 469 (1937) the plaintiff, as administrator, brought separate actions under the Massachusetts wrongful death statute against Mrs. Blake and her daughter. The death of the plaintiff's testator was caused by the daughter's negligent operation of her mother's automobile, and the plaintiff recovered separate judgments in the same amount against the mother and daughter. The defendant insurance company, which had insured the mother, paid the judgment against the daughter, and the plaintiff then sought to compel its payment of the judgment against the mother. His claim was denied by the Supreme Judicial Court of Massachusetts which pointed out that there had been but a single tort, namely, "the negligence of the daughter in operating the automobile"; that the mother's liability was not based on her fault but on "the agency relationship which existed between the mother and her negligent daughter"; and that since there was only one wrong and "legal satisfaction has been made for that wrong by the payment of the amount of the judgment in the case where the daughter was the defendant," there could be no further recovery against the mother. The plaintiff seeks to distinguish *Blake* on the ground that there the mother was not present when the accident occurred, whereas here the defendant was present though in the rumble seat. That circumstance can have no legal materiality in view of the stipulation that the Massachusetts judgment against the defendant was based on the negligence of Gould and that the Massachusetts complaint alleged negligent operation of the automobile by

Gould and ownership of the automobile by the defendant. It seems clear that the stipulation was intended to express the fact that the accident resulted solely from Gould's negli-. gence and that the defendant was held responsible only under the doctrine of *respondeat superior*. In this court the plaintiff has not sought to introduce any contrary testimony but has sought to depart from the stipulation by contending that the defendant was charged with personal negligence in the Massachusetts complaint, and he refers to a certified copy which alleges that the defendant or his agent Gould negligently operated and controlled the automobile. This alternative allegation in the complaint sheds no additional light as to the actual happening and does not alter the clear terms and import of the stipulation on which the matter was voluntarily submitted by the parties for judicial determination.

On the record before us we are not at all concerned with a case in which the culpable negligence of each of two joint or concurrent tortfeasors contributed to the death; in that situation the Massachusetts court has held that since its wrongful death statute is in large part penal in nature, recovery may be had in full from each of the joint or concurrent tortfeasors. See *Porter v. Sorell,* 280 *Mass.* 457, 182 *N. E.* 837, 85 *A. L. R.* 1159 (1932). We are here concerned, as the court was in *Leonard v. Blake, supra,* with a case where "there was only one real wrongdoer, although the doctrine of *respondeat superior* made his master responsible as well." See *Arnold v. Jacobs,* 316 *Mass.* 81, 54 *N. E. 2d* 922, 924 (*Mass. Sup. Jud. Ct.* 1944). And although there was complete payment of the amount of the judgment against the agent in *Blake,* whereas here there was only partial payment, the plaintiff has not sought to place any reliance on that distinction since admittedly the liability of Gould was fully discharged (*Perry v. Oliver,* 317 *Mass.* 538, 59 *N. E. 2d* 192 (*Mass. Sup. Jud. Ct.* 1945)), and there was as full "legal satisfaction" of the judgment against Gould as there was of the judgment against the agent in *Blake.* See 10 *N. E. 2d* at *page* 470.

In *Karcher v. Burbank*, 303 *Mass.* 303, 21 *N. E.* 2d 542, 124 *A. L. R.* 1292 (1939), Karcher, an agent of the American Sugar Company, was in a collision which resulted in injuries to the Burbanks. Karcher settled with the Burbanks and received a covenant not to sue which made no mention of the Sugar Company and did not reserve any rights against it. The Burbanks then sued the Sugar Company, seeking to hold it liable for the negligent act of its agent. Thereupon Karcher brought his action to restrain the suit by the Burbanks against the Sugar Company on the ground that if the Sugar Company were held liable to the Burbanks, it could obtain indemnity from him, as the only culpable party, and thereby nullify the purpose of his settlement and covenant. His position was sustained by the Supreme Judicial Court of Massachusetts which pointed out that the Sugar Company's liability was of "a derivative or secondary character, resting solely upon the doctrine of *respondeat superior*"; that the Company was, in effect, the surety of Karcher and "could recover over against him if compelled to pay damages for his negligence"; and that "it is a principle of the law of suretyship that a release or covenant not to sue the person known by the covenantor to be the principal will discharge the surety." See *Globe Indemnity Company v. Woburn National Bank*, 133 *F. Supp.* 833, 836 (*D. C. D. Mass.* 1955); *cf. Horgan v. Boston Elevated Ry. Co.*, 208 *Mass.* 287, 94 *N. E.* 386 (1911), where the court held that where an agent engaged in wrongful conduct for which his principal was responsible under the doctrine of *respondeat superior*, the release of the agent released the principal. See *Annotation, "Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa,"* 126 *A. L. R.* 1199 (1940).

While the *Karcher* case did not arise under the Massachusetts wrongful death statute, we consider that in the light of *Leonard v. Blake, supra,* its principles would be deemed applicable here by the Massachusetts court. The plaintiff's decedent died as the result of Gould's culpable

negligence and Gould consequently came under obligation to pay damages as provided in the wrongful death statute. The defendant also came under obligation, but only because of the doctrine of *respondeat superior* and not because of any culpable negligence on his part. As between Gould and the defendant, the responsibility was entirely that of Gould and if the defendant had first legally satisfied the obligation he would have been entitled to seek indemnification from Gould. Instead, Gould first legally satisfied the obligation and when that was done the intent was, insofar as the record before us indicates, that Gould be entirely free from any further obligation. If the defendant were now held responsible to the plaintiff, the defendant could seek and obtain indemnification from Gould and thus nullify the purpose and effect of Gould's settlement and payment. We are satisfied that this result would be deemed by the Massachusetts court to be violative of the principles expressed in its reported decisions.

The plaintiff has cited nothing to us which would indicate that the law of Pennsylvania or New Jersey would lead to any different conclusion. Her brief refers to no Pennsylvania decisions and her New Jersey citations are of no aid to her. In *Frank Martz Coach Co., Inc., v. Hudson Bus, &c., Co.,* 23 *N. J. Misc.* 342, 346 (*Sup. Ct.* 1945), Judge (later Justice) Ackerson cited *Karcher v. Burbank, supra,* with approval and noted that where a principal is not at fault but is compelled to pay damages for the negligence of his servant he may obtain indemnification from the servant since the principal is in effect "the servant's surety." See *Maryland Casualty Co. v. N. J. Mfrs. (Casualty) Ins. Co.,* 48 *N. J. Super.* 314, 327 (*App. Div.* 1958), affirmed 28 *N. J.* 17 (1958); *cf. Muldowney v. Middleman,* 176 *Pa. Super.* 75, 107 *A. 2d* 173 (1954). And while our recent opinions in *Breen v. Peck,* 28 *N. J.* 351 (1958), and *Daily v. Somberg, supra,* concerned themselves with the law of New Jersey pertaining to releases of culpable joint or concurrent tortfeasors, they did not discuss or pass upon the legal effects of the release of a negligent operator of a vehicle on the

*respondeat superior* liability of its non-negligent owner; in any event, we need not deal further with them or with the Pennsylvania or New Jersey law in view of our determination that the present case is controlled by Massachusetts law.

The plaintiff has made no mention of costs but the defendant's brief acknowledges that he should pay "the costs of the Massachusetts and Pennsylvania actions totalling $60.13, less costs of $17.50 in his favor on the first count of the Massachusetts action, or a net figure of $42.63." See *Leonard v. Blake, supra,* 10 *N. E. 2d* at *pages* 470–471. Upon the defendant's tender of the sum of $42.63 the judgment entered in the Mercer County Court should be set aside and judgment should be entered for the defendant.

Reversed, without costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—None.